UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
JUDY A. ROBBINS
UNITED STATES TRUSTEE
ELLEN M. HICKMAN
TRIAL ATTORNEY
515 Rusk, Suite 3516
Houston, Texas  77002
Tel:  (713) 718-4650 x 250
Fax:  (713) 718-4670

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NUMBER: |
| | § | |
| DIANDRA ANN DOMINO | § | 10-41701-H3-7 |
| | § | |
| DEBTOR | § | |

MOTION OF THE UNITED STATES TRUSTEE TO DISMISS
CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)

**************************************************************************************
BLR 9013 NOTICE: THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE WITH THE UNITED STATES BANKRUPTCY COURT, 515 RUSK, HOUSTON, TX 77002 AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.
**************************************************************************************

TO THE HONORABLE LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for the Southern District of Texas ("UST"), through the undersigned counsel, moves the court to dismiss this case pursuant to 11 U.S.C. § 707(b).  In support of the motion the UST respectfully represents as follows:

### I. Jurisdiction

1. The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b) and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

2. Judy A. Robbins is the duly appointed United States Trustee for the Southern and Western Districts of Texas ("UST") pursuant to 28 U.S.C. §581(a)(7).

3. Pursuant to 11 U.S.C. § 307, the UST has standing to appear and be heard on any issue in a case or proceeding under title 11. This Motion is filed under 11 U.S.C § 707(b)(1).[1]

4. Pursuant to 28 U.S.C. § 586(a)(3), the UST is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, § 101 *et seq.* Specifically, the UST is charged with a number of supervisory responsibilities in liquidation bankruptcy cases under chapter 7 of the Bankruptcy Code, including monitoring the progress of such cases and taking such actions as the UST deems to be appropriate to prevent undue delay in such progress. 28 U.S.C. § 586(a)(G).

### II. Factual Background

5. On December 27, 2010, Diandra Ann Domino ("Debtor") filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. The UST appointed W. Steve Smith ("Trustee") to serve as the chapter 7 trustee in this case, and he continues to serve in that capacity.

6. The chapter 7 meeting of creditors was first set for January 31, 2011, but reset to February 14, 2011 and continued again to February 24, 2011. The docket does not reflect that the meeting has been concluded by the Trustee.

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

2

7. To date, the Debtor has not received a discharge. The last day to oppose discharge or dischargeability is April 1, 2011.

8. On December 27, 2010, the Debtor filed the schedules (Dkt.#3), statement of financial affairs (Dkt.#4) and a means test (Dkt.#9). Amended Schedules B and C (Dkt.#20) were filed on February 17, 2011. On her petition the Debtor checked the nature of her debts to be primarily consumer debts. On her means test, the Debtor did not declare her debts to be non-consumer debts, completed the form and checked that the presumption did not arise.

9. Pursuant to § 704(b)(1)(a), the UST reviewed the materials filed by the Debtor. On February 10, 2011, the UST filed with the Court a Statement of Presumed Abuse ("10-day Statement") (Dkt.#18).

10. This Motion is timely filed within thirty (30) days of the date of the 10-Day Statement.

11. Debtor did not list any interest in real property on Schedule A. On Schedule B, in addition to other assets, the Debtor disclosed ownership in a 2005 Kia Sorento and 2008 Lincoln Navigator. On Amended Schedule B (Dkt.#20), the Debtor also listed a claim for 2010 Federal & State Tax Returns of $5,000.

12. On Schedule D, the Debtor disclosed the following secured claims totaling $50,336.00:

| **Creditor** | **Collateral** | **Amt of Claim** | **Unsecured** |
|---|---|---|---|
| Ford Motor Credit | Not identified[2] | $42,836.00 | $7,836.00 |

---

[2]Presumed to be the 2008 Lincoln Navigator.

3

| Title Loan Advantage Finance LLC | Not identified[3] | $ 7,500.00 | $2,500.00 |

13.  The Debtor scheduled no priority debt and $20,918.00 in unsecured debt. The unsecured debts consist of credit card charges totaling $8,380.00 and three apartment leases totaling $12,538.00.[4]

14.  According to the information provided on Schedule I, the Debtor is single. Her 27-yr old daughter and 8-yr old grandson live with the Debtor. The Debtor has been employed for 20 years as an RN nurse at the VA. The Debtor's monthly <u>net</u> income is shown to be $4,936.55. Deductions, based on single with zero exemptions, total $3,125.77 and include $2,623.60 in payroll taxes and social security, $85.48 insurance, and $416.69 in other deductions. The Debtor testified at a 341 meeting that the monthly payroll deduction described as "Allotment SV" in the amount of $216.67 was a savings account and the deduction described as "VCS Deduct" in the amount of $53.52 were charges at the canteen store.

15.  On Schedule J the Debtor disclosed monthly expenditures of $5,045.00 and negative cash flow of $108.45. Some of the expenses include $1,175[5] for an apartment lease, $1,620 for installment payments for auto, $250.00 for Child Care and $50.00 for education for child.

16.  In the Statement of Financial Affairs, the Debtor disclosed gross annual earnings

---

[3]Presumed to be the 2005 Kia Sorento.

[4]The leases are identified and described with dates the claims were incurred as 08/2004 - Lakeview Apts., 04/2005 - Cypress Creek Apts. and 03/2008 - the Lakes.

[5]Debtor testified that she moved to 11666 Gulf Point, Apt. 9201, Houston 77089 on November 30, 2010, and the rent is now $1,250.

from employment of $65,000 for 2008, 2009 and 2010.[6] The Debtor admitted that these amounts are probably a mistake.

17. At the Sec. 341 meeting of creditors held on January 31, 2011 and February 14, 2011, the Debtor testified that she intended to keep both vehicles and that she drives the Kia Sorento and both she and her fiancé drive the Lincoln Navigator. The Navigator was purchased in August, 2010, and at the time of filing, only one payment of $963.00 had been made. She testified that her fiancé was supposed to help pay for the Navigator, but he lost his job. The Navigator is kept at 11123 Benevolent Way, Tomball. As of November 30, 2010, the Debtor is residing at 11666 Gulf Point, Apt. 9201, Houston 77089. She testified that the Kia is collateral for a loan, the monthly payment is $557.00, and the loan is to be paid in November, 2011. The Debtor also testified that she claims her grandson as a dependent on her tax return. His total monthly child care is $250.00 and she contributes to some of that expense. Her daughter is employed but does not contribute to the household. She is paying for her car (which is not one of the vehicles listed on Debtor's Schedule B or D), her student loans and her own bills. The Debtor testified that she filed because she wants to keep the vehicles and wants to get back on track, that she has no health issues and her employment of over 24 years at VA is relatively secure.

18. The Debtor completed her Means Test on a household size of three. Her annualized income of $96,747.84 exceeded the applicable state median income for a household of three of $55,534.00. Accordingly, the Debtor's annualized income exceeded the applicable state median income for a household size of three. The Debtor completed the Means Test and checked that the presumption of abuse did <u>not</u> arise.

---

[6] The Debtor's 2009 1040A shows income from wages, salaries, tips, etc. was $89,725., and a Pay Advice date December 23, 2010 shows gross pay of $95,548.87 YTD.

### III. Cause Exists to Dismiss Case After Application of Sec. 704(b)(2)

19.     Section 707(b)(2)(A)(i) of the Bankruptcy Code provides that:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of --

    (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or

    (II) $11,725.

20.     In practical terms, the statute presumes that a chapter 7 filing is abusive if after deducting allowable expenses from income the debtor has monthly disposable income of at least $195.42 (which totals more than $11,725.00 over 60 months), or if monthly disposable income is greater than $109.58 but less than $195.42 and totals 25% of the debtor's unsecured non-priority debts when multiplied by 60.

21.     The Debtor reported total current monthly income of $8,062.32[7] (Form 22A, line 12) and annualized current monthly income of $96,747.84 (Form 22A, line 13). The applicable state median income for a household of three is $55,534.00. Accordingly, the Debtor's annualized current monthly income exceeds the applicable state median income for a household of three.

22.     The Debtor claimed a household size of three and claimed the IRS Standard for operating and ownership expenses for two vehicles.

23.     Reserving the issue of whether the Debtor is entitled to claim a household size of

---

[7]The Debtor provided all pay advices for the look-back period of June 1, 2010 through November 30, 2010 except for the June 11, 2011 pay advice. The UST has estimated the gross income received by the Debtor to be $8,209.62 with annualized current monthly income of $98,515.44. However, for purposes of determining whether the presumption arises under §707(b)(2), the gross income disclosed by the Debtor of $8,062.32 will be used.

three, the UST has determined that the presumption of abuse arises even if a household size of three is allowed because a single debtor is only entitled to claim the IRS Standard for operating and ownership for only one vehicle (though the debtor is entitled to the secured debt expenses relating to additional cars on line 42 of Form 22B). The IRS Transportation Standards, which are expressly referenced in section 707(b)(2)(A)(ii)(I) of the Code, are consistent with this position. *See* IRS Transportation Standards which may be found at the IRS website: http://www.irs.gov/individuals/article/0,,id=96543,00.html  The Standards now provide that "a single taxpayer is normally allowed one automobile." *Id.*  Thus, absent unusual circumstances demonstrating the need for a second vehicle, a single debtor is allowed the ownership and operating expense for only one vehicle under section 707(b)(2)'s means test. *See In re Daniel-Sanders*, 420 B.R. 102 (Bankr. W.D. N.Y. 2009).

24. The Debtor claimed the IRS Standard for the operation of two vehicles on line 22A. The UST objects to the allowance of this deduction because the Debtor is single and may only claim the IRS Standard for the operation of one vehicle.

25. The Debtor claimed the IRS Standard of $496.00 on lines 23 and 24 for the ownership of two vehicles. The UST objects to these deductions, but allows the Average Monthly Payment of $713.93 on line 23b (and line 42) for the Lincoln Navigator. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case divided by 60 (as defined on line 42). The UST calculated the Average Monthly Payment for the Lincoln Navigator to be $713.93 and entered this amount on line 23b. The Average Monthly Payment of $125.00 for the 2005 Kia Sorento was entered on line 42.

26. The Debtor claimed the expense of $2,623.60 on line 25 for taxes. The UST objects to this amount. The Debtor appears to be over-withholding, as evidenced by the refund of $5,751

in 2009 and exemption of $5,000 for 2010. The UST has calculated the Debtor's monthly federal income tax, social-security taxes and Medicare taxes to be $2,147.56.

    27.    Other adjustments to the Debtor's Means Test were made as follows:

    a.    The Debtor claimed the expense of $362.52 on line 26 for involuntary deductions for employment. The UST objects to this amount and reduces this amount to $61.45 for the "Retire FERS" deduction.

    b.    The Debtor did not include any expense for life insurance on line 27. The UST adds $30.88 based on Schedule I.

    c.    The Debtor did not include any expense for telecommunication services on line 32. The UST adds $110.00 based on Schedule J.

    d.    The Debtor claimed an expense of $85.48 for insurance on line 34. Based upon the Debtor's pay advices, the UST has added an additional $400.96 for medical, dental and vision insurance, for a total amount on line 34 of $486.44.

    e.    The Debtor claimed an expense of $254.17 for charitable contributions on line 40. Based upon Schedule I deductions and Schedule J expense, the UST adjusts the amount on line 40 to $300.17.

    f.    The Debtor did not include any amount on line 42 for secured claims. The amounts of $713.93 for the Navigator and $125 for the Kia for a total of $838.93 are included on line 42.

    28.    If the adjustments are allowed in accordance with the UST's objections, the Debtor's monthly disposable income, according to the UST's calculations, would be $653.46. This amount multiplied by 60 exceeds $11,725.00. The 60-month disposable income is $39,207.60 (Line 51). Accordingly, the presumption of abuse arises in this case. A copy of the UST means test is attached hereto as Exhibit "A".

    29.    Once the presumption of abuse arises, under 11 U.S.C. §707(b)(2)(B)(i), the debtor may rebut the presumption by demonstrating "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there

is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i).

30.  The UST believes that the Debtor has not demonstrated any special circumstances to rebut the presumption.

31.  Section 707(b)(1) provides that the court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of chapter 7. Cause exists to dismiss this case under § 707(b)(1) because a presumption of abuse arises in this case after application of §707(b)(2).

### IV. Cause Exists to Dismiss Case After Application of Section 707(b)(3)

32.  In addition, even in cases where the presumption of abuse does not arise or is rebutted a court may nevertheless dismiss a chapter 7 case if the court finds that the case was filed in bad faith or if the totality of the circumstances of the debtor's financial situation demonstrates abuse. §707(b)(3).

33.  Section 707(b)(3) of the Bankruptcy Code provides that:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(1) of such paragraph does not arise or is rebutted, the court shall consider-

   (A) whether the debtor filed the petition in bad faith; or

   (B) the totality of the circumstances...of the debtor's financial situation demonstrates abuse.

34.  According to Debtors' Schedule J, there is negative $108.45 in disposable income. The UST believes with the adjustments to income and expenses shown on Schedules I and J[8] there is disposable income. With the following adjustments, net income is increased from $4,936.55 to $5,412.86:

---

[8]Docket #3.

    a.    The Debtor shows payroll deductions for tax withholding, social security and Medicare in the amount of $2,623.60. The UST calculates these payroll tax deductions to be $1,963.00.

    b.    The deduction of $216.67 described as "Allotment SV" is a savings account. The Debtor should not be permitted to continue to save for herself if she is asking to discharge her debts to unsecured creditors.

    c.    The deduction of $85.48 for insurance was increased to $486.44.

35.    Even if adjustments are only made to income, there is over $350.00 in disposable income. Adjustments to expenses may be appropriate when comparing to the IRS Standards, as follows:

    a.    The Debtor testified that she moved to another apartment on November 30, 2010. The rent is $1,250 per month, which exceeds the IRS standard of $922.00 for a household size of three.

    b.    The Debtor is paying $1,620.00 per month in payments for two vehicles. The Lincoln Navigator is a high-end vehicle that appears to be driven by her fiancé and maintained at his Tomball residence. Even if she retains both vehicles, the Debtor testified that the payment for the Kia Sorento is $557 per month and the loan is due to be paid off in November, 2011. Once payments on the Kia are completed, this money would be included as part of the Debtor's disposable income.

36.    The Debtor has scheduled $20,918.00 in unsecured debt on Schedule F. With adjustments to income and expenses, it appears that Debtor has an ability to repay her creditors by funding a chapter 13 plan. Under these circumstances, it would be an abuse to grant the Debtor a discharge in chapter 7.

37.    Cause exists to dismiss this case under §707(b)(1) because the totality of the circumstances of the Debtor's financial situation demonstrates abuse after application of §707(b)(3). With adjustments to tax withholding to increase net monthly income and addressing expenses, the Debtor has disposable income and a present ability to fund a chapter 13 plan which would make a significant distribution to unsecured claims within a reasonable time. Granting relief would

therefore be an abuse of the provisions of chapter 7 of the Bankruptcy Code.

WHEREFORE, the United States Trustee respectfully requests that this Court dismiss this case under § 707(b) and grant such other and further relief to which the United States Trustee may justly be entitled.

Dated: March 11, 2011 　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　JUDY A. ROBBINS
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES TRUSTEE


　　　　　　　　　　　　　　　　　　　　　　　By:/s/ *Ellen M. Hickman*
　　　　　　　　　　　　　　　　　　　　　　　　　Ellen M. Hickman, #12975800
　　　　　　　　　　　　　　　　　　　　　　　　　515 Rusk, Suite 3516
　　　　　　　　　　　　　　　　　　　　　　　　　Houston, Texas  77002
　　　　　　　　　　　　　　　　　　　　　　　　　(713) 718-4650 ext. 250
　　　　　　　　　　　　　　　　　　　　　　　　　(713) 718-4680 Fax

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing MOTION OF THE UNITED STATES TRUSTEE TO DISMISS CHAPTER 7 CASE was served upon the parties as listed below by the indicated means on the 11th day of March, 2011. All other parties shall be served by BNC noticing.

                                                      /s/ *Ellen M. Hickman*
                                                      Ellen M. Hickman

DEBTOR *Pro Se* (Via U. S. Mail, first class, postage prepaid)
Diandra Ann Domino
12055 Sabo #914
Houston, TX 77089

Address as of 11/30/2010:
Diandra Ann Domino
11666 Gulf Point, Apt. 9201
Houston, TX 77089

DEBTOR'S' COUNSEL - n/a

CHAPTER 7 TRUSTEE (Via ECF)
W. Steve Smith
McFall, Breitbeil & Smith, P.C.
1331 Lamar Street, Ste. 1250
Houston, TX 77010